**IN THE UNITED STATED DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LEMAIRE ILLUMINATION TECHNOLOGIES, LLC | § § § | |
| Plaintiff, | § | Civil Action No. _____ |
| | § | |
| vs. | § | JURY TRIAL DEMANDED |
| | § | |
| LG ELECTRONICS USA, INC., LG ELECTRONICS MOBILECOMM USA, INC., and LG ELECTRONICS MOBILE RESEARCH U.S.A., LLC. | § § § § § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Lemaire Illumination Technologies, LLC ("Lemaire Illumination") files this Plaintiff's Original Complaint for Patent Infringement against Defendants LG Electronics USA, Inc. ("LGE USA"), LG Electronics Mobilecomm USA, Inc. ("LGE MobileComm"), and LG Electronics Mobile Research, U.S.A., LLC. ("LGE Mobile Research"), (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

1.     Lemaire Illumination is an inventor-owned technology company that holds twelve issued U.S. Patents and one U.S. Patent Application concerning pulsed light-emitting diode ("LED") illumination and apparatuses and methods related thereto, including at least U.S. Patent No. 6,095,661, issued August 1, 2000, entitled "Method and Apparatus for an L.E.D. Flashlight" (the "'661 Patent"), U.S. Patent No. 6,488,390, issued December 3, 2002, entitled "Color-Adjusted Camera Light and Method" (the "'390 Patent"), and U.S. Patent No. 9,119,266, issued

August 28, 2015, entitled "Pulsed L.E.D. Illumination Apparatus and Method" (the "'266 Patent"), (collectively, the "Patents-in-suit").

2.      Defendants have infringed the Patents-in-suit by making and using the apparatuses and methods claimed by the Patents-in-suit by making, using, importing, providing, supplying, distributing, selling, and/or offering for sale at least the LG G3 smartphone device and the LG G4 smartphone device (collectively, the "Accused Devices").  Lemaire Illumination seeks damages for patent infringement.

## THE PARTIES

3.      Plaintiff **Lemaire Illumination** is a Texas limited liability company organized and existing under the laws of the State of Texas, having a principal place of business at 14565 Grand Avenue, Burnsville, Minnesota 55306.

4.      Defendant **LGE USA** is a Delaware corporation with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. LGE USA designs, manufactures, uses, provides, supplies, distributes, imports into the United States, sells, and/or offers for sale in the United States cell phones, smartphones, tablets, and other computing devices that include at least a camera and flash system. LGE USA can be served with process, by serving United States Corporation Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

5.      Defendant **LGE MobileComm** is a California corporation with its principal place of business at 10225 Willow Creek Rd., San Diego, California 92131. LGE MobileComm designs, manufactures, uses, provides, supplies, distributes, imports into the United States, sells, and/or offers for sale in the United States cell phones, smartphones, tablets, and other computing devices that include at least a camera and flash system. LGE MobileComm can be served with process, by serving CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6.      Defendant **LGE Mobile Research** is a California limited liability company organized and existing under the laws of the State of California with its principal place of business at 10225 Willow Creek Rd., San Diego, California 92131. LGE Mobile Research designs, manufactures, uses, provides, supplies, distributes, imports into the United States, sells, and/or offers for sale in the United States cell phones, smartphones, tablets, and other computing devices that include at least a camera and flash system. LGE Mobile Research can be served with process, by serving Corporation Service Company d/b/a CSC – Lawyers Incorporating Service, 211 E. 7th Street Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

7.      This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C.§§ 271 and 281-285.

8.      The Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendants. Defendants have conducted and continue to conduct business within the State of Texas. Defendants, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ship, distribute, offer for sale, sell, design, manufacture, and advertise products and/or services that infringe the Patents-in-suit in the United States, the State of Texas, and the Eastern District of Texas.

10.      Defendants, directly and through subsidiaries and intermediaries, have purposefully and voluntarily placed one or more of their infringing Accused Devices, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas. These infringing Accused Devices have been and continue to be purchased and used by consumers in the Eastern District of Texas.

Defendants have committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

11.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391 and 28 U.S.C. §1400(b) because, among other things, each defendant is subject to personal jurisdiction in this district. Further, a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## FACTUAL BACKGROUND

### A. Inventor Charles A. Lemaire

12.     Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

13.     Mr. Charles A. Lemaire is one of the inventors of each of the Patents-in-suit as well as the director and a member of Lemaire Illumination.

14.     Passionate about computers, optics, semiconductors, and electronics, Mr. Lemaire has spent more than three decades developing and perfecting a range of high-performance computers and other technologies.

15.     Mr. Lemaire received his undergraduate degree in electrical engineering from the University of Minnesota with an emphasis on very-large-scale integration ("VLSI") circuits and integrated circuit fabrication. Fascinated about the area and willing to solidify his training in electronics, Mr. Lemaire went on to take numerous graduate courses in electronics, lasers, magnetics, and coding theory.

16.     Mr. Lemaire continued his education earning an MBA from the College of St. Thomas and a law degree from William Mitchell College of Law.

17.     Upon obtaining his undergraduate electronics degree, Mr. Lemaire completed an internship with Lawrence Livermore National Laboratory in California.   After numerous graduate-school courses, he practiced as an electronics and software engineer with the IBM Corporation for more than seventeen years.   After earning his law degree, Lemaire practiced patent law with the Intellectual Property Group at the law firm of Schwegman, Lundberg and Woessner, P.A.  Mr. Lemaire is currently the founder and president of the Lemaire Patent Law Firm, PLLC.

18.     Mr. Lemaire began working on his very first patented co-invention in the early 1980s and he continues to this day to use his knowledge and his vast experience to innovate and improve various technologies.

### B.   Mr. Lemaire's Inventions related to LEDs

19.     Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

20.     Prior to Mr. Lemaire's work, LEDs were typically driven by a voltage supply that supplied current through a current-limiting resistor.   The brightness changed as the voltage changed; for example, as a battery drained, LEDs grew dimmer. Some companies at that time used pulsed electrical current to drive red LEDs to obtain monochrome images that were analyzed for machine-vision automation applications.   Other companies used varying pulse widths to change the relative amounts of pulsed electrical current to drive red-, green-, and blue-light LEDs to obtain mixes of colors, but not while maintaining the illumination at a given level, nor to obtain color balance for digital color photos.

21.     Over a period of approximately eight years, Mr. Lemaire worked with a team that included Mr. Lemaire's future co-inventors, Mr. Gary A. Lebens and Mr. Charles T. Bourn, to

contribute to several innovations covering the LED field.  Mr. Lebens, Mr. Bourn, and Mr. Lemaire considered how to drive LEDs more efficiently, how to maintain illumination brightness over a range of input voltages, and how to obtain and use various color spectra that were newly enabled by gallium nitride ("GaN") LEDs.

22.     Lemaire's wide-ranging engineering background enabled him to envision new applications for the pulsed LED illumination and new ways to modify and control the color spectrum while maintaining a given brightness. As a result, Mr. Lemaire, together with Mr. Lebens and Mr. Bourn, co-invented several related inventions involving various applications for LEDs.

23.     An initial patent application, U.S. Application No. 09/044,559, filed on March 19, 1998 (the "'559" Application), described several inventions that contributed greatly to methods, devices, and applications related to LED technology that extended way beyond the old premise of supplying pulsed current to LEDs.  The '559 Application duly and legally issued as the '661 Patent on August 1, 2000.

24.     While the '559 Application was still pending, the first of several divisional and continuation patent applications was filed, each duly and legally claiming priority to the original '559 Application.  These additional patent applications form a portfolio that contains claims to other inventions described in the specification and drawings of the original '559 Application.

25.     On October 28, 2004, Mr. Lemaire purchased the entire portfolio of patents related to the initial '661 Patent, including a related pending patent application at the time and all future applications based on the original '661 Patent filed in the United States and all foreign countries, including the '390 Patent and the '266 Patent.

### C.  **Lemaire Illumination**

26.     Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

27.     In 2011, following his entrepreneurial spirit, Mr. Lemaire co-founded Lemaire Illumination Technologies, LLC with the intent to develop and license various LED technologies based on the LED patents co-invented and owned by Mr. Lemaire.

28.     Today, Lemaire Illumination owns a diverse portfolio of electrical patents, including the Patents-in-suit.

29.     Over the last four and a half years, Lemaire Illumination's portfolio has increased substantially through Mr. Lemaire's efforts to strengthen the color-spectrum-control and color-balance technology and better understand and address the needs of the LED industry.

### D.  **Lemaire Illumination Patents**

30.     Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

31.     The United States Patent and Trademark Office (the "USPTO") has recognized the contributions of Mr. Lemaire to the public domain and it has awarded Mr. Lemaire numerous patents.

32.     Lemaire Illumination is the owner of the entire right, title, and interest in and to the '661 Patent entitled "Method and Apparatus for an L.E.D. Flashlight" that issued on August 1, 2000. Lemaire Illumination holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the '661 Patent. A copy of the '661 Patent is attached as **Exhibit A** hereto. Claim 34 of the '661 Patent is exemplary and recites as follows: An illumination source, comprising: (a) a light-emitting diode (LED) housing comprising one or

more LEDs; and (b) an electrical control circuit that selectively applies pulsed power from a DC voltage source of electric power to the LEDs to control a light output color spectrum of the one or more LEDs and maintain a predetermined light output level of the LED units as a charge on the DC voltage source varies.

33.    Lemaire Illumination is the owner of the entire right, title, and interest in and to the '390 Patent entitled "Color-Adjusted Camera Light and Method" that issued on December 3, 2002. Lemaire Illumination holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the '390 Patent. A copy of the '390 Patent is attached as **Exhibit B** hereto. Claim 19 of the '390 Patent is exemplary and recites as follows: An illumination source comprising: a housing; one or more light-emitting diodes (LEDs) attached to the housing; a control circuit operatively coupled to supply electrical pulses to the one or more LEDs that adjusts a height of the pulses to control a color spectrum of the LED output light and adjusts an LED on-time proportion to control an amount of the output light.

34.    Lemaire Illumination is the owner of the entire right, title, and interest in and to the '266 Patent entitled "Pulsed L.E.D. Illumination Apparatus and Method" and issued on August 25, 2015. Lemaire Illumination holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the '266 Patent. A copy of the '266 Patent is attached as **Exhibit C** hereto. Claims 1, 9, and 16 are exemplary and respectively recite as follows:

    **Claim 1**: An apparatus comprising: a device that includes an electronic camera configured to output an image signal; a measurement unit configured to measure a color balance of the image signal; a plurality of light-emitting diodes (LEDs) mounted to the device, wherein the plurality of light-emitting diodes includes one or more LEDs having

a first characteristic spectrum and one or more LEDs having a second characteristic spectrum, wherein the first characteristic spectrum is different from the second characteristic spectrum; a control circuit, operably coupled to the measurement unit and to the plurality of light emitting diodes, wherein the control circuit controls a pulse characteristic to the one or more LEDs having a first characteristic spectrum in  order to change a proportion of light output having the first characteristic spectrum to that having the second characteristic spectrum that is different than the first  spectrum based at least in part on the measured color balance of the image signal.

**Claim 9**: A method for driving a plurality of light-emitting diodes in a device having an electronic camera, the method comprising: providing a device having a camera and a plurality of light-emitting diodes (LEDs), wherein the plurality of light-emitting diodes emits light having a spectrum that is adjustable; obtaining an image signal; measuring a color balance of the image signal; adjusting the spectrum of light from the plurality of light-emitting diodes based at least in part on the measured color balance.

**Claim 16**: An apparatus comprising: a device that includes an electronic camera configured to output an image signal; a measurement unit configured to measure a color balance of the image signal; a plurality of light-emitting diodes mounted to the device, wherein the plurality of light-emitting diodes includes one or more LEDs having a first characteristic spectrum and one or more LEDs having a second characteristic  spectrum, wherein the first characteristic spectrum is  different from the second characteristic spectrum; means for adjusting a color spectrum of light from the plurality of light-emitting diodes based at least in part on  the measured color balance.

35.     On information and belief, the Defendants were well aware of the '661 Patent, the '390 Patent, and the '266 Patent since at least the filing of this action.

**E.   Conduct by Defendants**

**i.   The LG G3 Smartphone Device**

36.     Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

37.     On information and belief, on or about May 27, 2014, Defendants unveiled the LG G3 smartphone device worldwide, with launch events in London, New York, San Francisco, Seoul, and Istanbul.   *See*   http://www.lgnewsroom.com/2014/05/with-new-g3-lg-aims-to-redefine-concept-of-smart-and-simple/.

38.     On information and belief, on or about July 11, 2014, Defendants began making, using, importing, providing, supplying, distributing, selling, and/or offering for sale the LG G3 smartphone device in the United States.

39.     On information and belief, the LG G3 smartphone device includes, among other things, a housing, an electrical control circuit, a measurement unit (which can be a processor and/or a sensor), a camera, a dual flash that includes one or more LEDs, and a battery that provides DC voltage to the one or more LEDs of the LG G3 smartphone device.   *See* "Specifications" at http://www.lg.com/us/mobile-phones/g3.

40.     On information and belief, when the camera of the LG G3 smart phone device is activated to capture an image, the electrical control circuit selectively provides a set of pulses from the battery to the dual flash, which generates a light output of the one or more LEDs.  This set of pulses changes to control a color spectrum of the light output of the one or more LEDs of

the dual flash and adjusts an LED on-time, thereby controlling the light output as the DC voltage source (i.e., the battery) charge varies.  *See* Exhibits D-1, E-1, and F-1.



*See* https://www.youtube.com/watch?v=Au3zABq9bD4.

41.     On information and belief, at least the camera of the LG G3 smartphone device outputs an image signal, and the measurement unit measures a color balance of the image signal. *See* Exhibits D-1, E-1, and F-1.

**ii.     The LG G4  Smartphone Device**

42.     Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

43.     On information and belief, on or about April 29, 2015, Defendants unveiled the LG G4 smartphone device at launch events in New York, London, Paris, Singapore, Istanbul, and  Seoul.    *See*  http://www.lgnewsroom.com/2015/04/lg-g4-the-most-ambitious-smartphone-yet/.

44.     On information and belief, on or about May 18, 2015, Defendants began making, using, importing, providing, supplying, distributing, selling, and/or offering for sale the LG G4 smartphone device in the United States.   *See* http://www.lgnewsroom.com/2015/05/lg-g4-to-begin-shipping-in-key-markets-worldwide/.

45.     On information and belief, the LG G4 smartphone device includes, among other things, a housing, an electrical control circuit, a measurement unit (which can be a processor and/or a sensor), a camera, a flash that includes one or more LEDs, and a battery that provides DC voltage to the one or more LEDs of the LG G4 smartphone device.   *See* http://www.lg.com/us/mobile-phones/g4/tech_specs.

46.     On information and belief, the LG G4 smartphone device includes a color spectrum sensor.  *See id.*  According to Defendants:

> [t]he advanced camera in the LG G4 is complemented by Color Spectrum Sensor (CSS), the first feature of its kind to find its way into a smartphone. CSS improves color accuracy by *precisely reading the RGB values of the ambient light in a scene*, as well as the infrared light reflected from objects. *CSS uses this information to adjust the camera's white balance and flash color* to create images that are as close to what one would see with the naked eye. With Color Spectrum Sensor, no longer will reds appear as bright orange or whites as dull yellow.

(emphasis     added)     http://www.lgnewsroom.com/2015/04/lg-g4-the-most-ambitious-smartphone-yet/.

47.     On information and belief, when the camera of the LG G4 smartphone device is activated to capture an image, the electrical control circuit selectively provides a set of pulses from the battery to the flash, which generates a light output of the one or more LEDs.  This set of pulses changes to control a color spectrum of the light output for the one or more LEDs of the flash and adjusts an LED on-time, thereby controlling the light output as the DC voltage source (i.e., the battery) charge varies.  *See* Exhibits D-2, E-2, and F-2.

48.     On information and belief, at least the camera and/or the color spectrum sensor of the LG G4 smartphone device outputs an image signal, and the color spectrum sensor and/or the measurement unit measures a color balance of the image signal.   *See* http://www.lgnewsroom.com/2015/04/lg-g4-the-most-ambitious-smartphone-yet/.

## COUNT I

## INFRINGEMENT OF UNITED STATES PATENT NO. 6,095,661

49.     Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

50.     On August 1, 2000, the '661 Patent entitled "Method and Apparatus for an L.E.D. Flashlight" was duly and legally issued by the USPTO.

51.     Lemaire Illumination owns the '661 Patent by assignment and possesses all rights of recovery under the '661 Patent, including the exclusive right to sue for infringement, recover damages, and obtain injunctive relief.

52.     Lemaire Illumination has not licensed or otherwise authorized, explicitly or implicitly, the '661 Patent in any way to Defendants.

53.     Defendants, directly or through intermediaries, have been and are now, among other things, making, using, importing, providing, supplying, distributing, selling, and/or offering for sale apparatuses including, without limitation, the Accused Devices that are covered by one or more claims of the '661 Patent, in the State of Texas, in this judicial district, and elsewhere in the United States.   In doing so, Defendants infringe one or more claims of the '661 Patent, literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), including at least claim

34 of the '661 Patent as described in the exemplary claim charts attached as **Exhibits D-1 and D-2**[1].

54.     On information and belief, Defendants have infringed the '661 Patent by inducing others, including at least users of the Accused Devices, through its advertising, publications, instructions, manuals, and/or technical support to infringe one or more of at least claim 34 of the '661 Patent in violation of 35 U.S.C. § 271(b).

55.     On information and belief, Defendants take active steps to induce infringement of one or more of at least claim 34 of the '661 Patent by others, including its customers, authorized resellers, distributors, and users of the Accused Devices, and Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, television, store displays, etc.), promoting, and instructing others to use and/or how to use at least the camera and flash systems of the Accused Devices.

56.     On information and belief, Defendants know or should know that such activities induce others to directly infringe one or more of at least claim 34 of the '661 Patent, including for example, by encouraging them to use and/or how to use at least the camera and flash systems of the Accused Devices.

57.     On information and belief, Defendants contribute to the infringement of at least claim 34 of the '661 Patent by others, including its customers, authorized resellers, and distributors, and users of the Accused Devices.  Acts by Defendants that contribute to the infringement by others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of at least the Accused Devices for use in the claimed processes of the '661 Patent

---

[1] Lemaire Illumination reserves the right under all applicable laws, Federal Rules of Civil Procedure, and local rules of this Court to modify such claim charts as pertinent information becomes available through discovery.

and/or the camera and flash component systems of the Accused Devices which are not staple articles or capable of substantial non-infringing uses, and constitute a material part of the inventions claimed in one or more of at least claim 34 of the '661 Patent.  Defendants knew or should have known that at least the Accused Devices and/or the camera and flash component systems of the Accused Devices were especially made or adapted for use in an infringement of one or more of at least claim 34 of the '661 Patent.

58.    Defendants undertook and continue infringing actions despite that such activities infringe the '661 Patent, which has been duly issued by the USPTO, and is presumed valid.  For example, since at least the filing of this action, Defendants have been aware that their actions constituted and continue to constitute infringement of the '661 Patent, and that the '661 Patent is valid.  Despite their knowledge that their actions constitute infringement, Defendants have continued their infringing activities, which is an egregious case of culpable behavior.  As such, Defendants willfully infringe the '661 Patent.

59.    Lemaire Illumination has been injured and has been caused significant financial damage as a direct and proximate result of the Defendants' infringement of the '661 Patent.

60.    Unless enjoined by this Court, Defendants will continue to infringe the '661 Patent, and thus cause irreparable injury and damage to Lemaire Illumination.

61.    Lemaire Illumination is entitled to recover from Defendants the damages sustained by Lemaire Illumination as a result of the Defendants' wrongful acts in an amount subject to proof at trial.

62.    Lemaire Illumination has been irreparably injured and is entitled to seek injunctive relief, in addition to all other legal and equitable remedies.

## COUNT II

## INFRINGEMENT OF UNITED STATES PATENT NO. 6,488,390

63.     Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

64.     On December 3, 2002, the '390 Patent entitled "Color-Adjusted Camera Light and Method" was duly and legally issued by the USPTO.

65.     Lemaire Illumination owns the '390 Patent by assignment and possesses all rights of recovery under the '390 Patent, including the exclusive right to sue for infringement, recover damages, and obtain injunctive relief.

66.     Lemaire Illumination has not licensed or otherwise authorized, explicitly or implicitly, the '390 Patent in any way to Defendants.

67.     Defendants, directly or through intermediaries, have been and are now, among other things, making, using, importing, providing, supplying, distributing, selling, and/or offering for sale apparatuses including, without limitation, the Accused Devices that are covered by one or more claims of the '390 Patent, in the State of Texas, in this judicial district, and elsewhere in the United States.  In doing so, Defendants infringe one or more claims of the '390 Patent, literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), including at least claim 19 of the '390 Patent as described in the exemplary claim charts attached as **Exhibits E-1 and E-2**[2].

68.     On information and belief, Defendants have infringed the '390 Patent by inducing others, including at least users of the Accused Devices, through their advertising, publications,

---

[2] Lemaire Illumination reserves the right under all applicable laws, Federal Rules of Civil Procedure, and local rules of this Court to modify such claim charts as pertinent information becomes available through discovery.

instructions, manuals, and/or technical support to infringe one or more of at least claim 19 of the '390 Patent in violation of 35 U.S.C. § 271(b).

69.     On information and belief, Defendants take active steps to induce infringement of one or more of at least claim 19 of the '390 Patent by others, including its customers, authorized resellers, distributors, and users of the Accused Devices, and Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, television, store displays, etc.), promoting, and instructing others to use and/or how to use at least the camera and flash systems of the Accused Devices.

70.     On information and belief, Defendants know or should know that such activities induce others to directly infringe one or more of at least claim 19 of the '390 Patent, including for example, by encouraging them to use and/or how to use at least the camera and flash systems of the Accused Devices.

71.     On information and belief, Defendants contribute to the infringement of at least claim 19 of the '390 Patent by others, including its customers, authorized resellers, and distributors, and users of the Accused Devices.  Acts by Defendants that contribute to the infringement by others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of at least the Accused Devices for use in the claimed processes of the '390 Patent and/or the camera and flash component systems of the Accused Devices which are not staple articles or capable of substantial non-infringing uses, and constitute a material part of the inventions claimed in one or more of at least claim 19 of the '390 Patent.  Defendants knew or should have known that at least the Accused Devices and/or the camera and flash component

systems of the Accused Devices were especially made or adapted for use in an infringement of one or more of at least claim 19 of the '390 Patent.

72.     Defendants undertook and continue their infringing actions despite that such activities infringe the '390 Patent, which has been duly issued by the USPTO, and is presumed valid.  For example, since at least the filing of this action, Defendants have been aware that their actions constituted and continue to constitute infringement of the '390 Patent, and that the '390 Patent is valid.  Despite their knowledge that their actions constitute infringement, Defendants have continued their infringing activities, which is an egregious case of culpable behavior.  As such, Defendants willfully infringe the '390 Patent.

73.     Lemaire Illumination has been injured and has been caused significant financial damage as a direct and proximate result of the Defendants' infringement of the '390 Patent.

74.     Unless enjoined by this Court, Defendants will continue to infringe the '390 Patent, and thus cause irreparable injury and damage to Lemaire Illumination.

75.     Lemaire Illumination is entitled to recover from Defendants the damages sustained by Lemaire Illumination as a result of the Defendants' wrongful acts in an amount subject to proof at trial.

76.     Lemaire Illumination has been irreparably injured and is entitled to seek injunctive relief, in addition to all other legal and equitable remedies.

## COUNT III

## INFRINGEMENT OF UNITED STATES PATENT NO. 9,119,266

77.     Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

78.     On August 25, 2015, the '266 Patent entitled "Pulsed L.E.D. Illumination Apparatus and Method" was duly and legally issued by the USPTO.

79.     Lemaire Illumination owns the '266 Patent by assignment and possesses all rights of recovery under the '266 Patent, including the exclusive right to sue for infringement, recover damages, and obtain injunctive relief.

80.     Lemaire Illumination has not licensed or otherwise authorized, explicitly or implicitly, the '266 Patent in any way to Defendants.

81.     Defendants, directly or through intermediaries, have been and are now, among other things, making, using, importing, providing, supplying, distributing, selling, and/or offering for sale apparatuses including, without limitation, the Accused Devices that are covered by one or more claims of the '266 Patent, in the State of Texas, in this judicial district, and elsewhere in the United States.   In doing so, Defendants infringe one or more claims of the '266 Patent, literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), including at least claims 1, 9, and 16 of the '266 Patent as described in the exemplary claim charts attached as **Exhibits F-1 and F-2**[3].

82.     On information and belief, Defendants have infringed the '266 Patent by inducing others, including at least users of the Accused Devices, through their advertising, publications, instructions, manuals, and/or technical support to infringe one or more of at least claims 1, 9, and 16 of the '266 Patent in violation of 35 U.S.C. § 271(b).

83.     On information and belief, Defendants take active steps to induce infringement of one or more of at least claims 1, 9, and 16 of the '266 Patent by others, including its customers, authorized resellers, distributors, and users of the Accused Devices, and Defendants take such

---

[3] Lemaire Illumination reserves the right under all applicable laws, Federal Rules of Civil Procedure, and local rules of this Court to modify such claim charts as pertinent information becomes available through discovery.

active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, television, store displays, etc.), promoting, and instructing others to use and/or how to use at least the camera and flash systems of the Accused Devices.

84.     On information and belief, Defendants know or should know that such activities induce others to directly infringe one or more of at least claims 1, 9, and 16 of the '266 Patent, including for example, by encouraging them to use and/or how to use at least the camera and flash systems of the Accused Devices.

85.     On information and belief, Defendants contribute to the infringement of at least claims 1, 9, and 16 of the '266 Patent by others, including its customers, authorized resellers, and distributors, and users of the Accused Devices. Acts by Defendants that contribute to the infringement by others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of at least the Accused Devices for use in the claimed processes of the '266 Patent and/or the camera and flash component systems of the Accused Devices which are not staple articles or capable of substantial non-infringing uses, and constitute a material part of the inventions claimed in one or more of at least claims 1, 9, and 16 of the '266 Patent. Defendants knew or should have known that at least the Accused Devices and/or the camera and flash component systems of the Accused Devices were especially made or adapted for use in an infringement of one or more of at least claims 1, 9, and 16 of the '266 Patent.

86.     Defendants undertook and continue their infringing actions despite that such activities have infringed the '266 Patent, which has been duly issued by the USPTO, and is presumed valid. For example, since at least the filing of this action, Defendants have been aware that their actions constituted and continue to constitute infringement of the '266 Patent, and that

the '266 Patent is valid. Despite their knowledge that their actions constitute infringement, Defendants have continued their infringing activities, which is an egregious case of culpable behavior. As such, Defendants willfully infringe the '266 Patent.

87. Lemaire Illumination has been injured and has been caused significant financial damage as a direct and proximate result of the Defendants' infringement of the '266 Patent.

88. Unless enjoined by this Court, Defendants will continue to infringe the '266 Patent, and thus cause irreparable injury and damage to Lemaire Illumination.

89. Lemaire Illumination is entitled to recover from Defendants the damages sustained by Lemaire Illumination as a result of the Defendants' wrongful acts in an amount subject to proof at trial.

90. Lemaire Illumination has been irreparably injured and is entitled to seek injunctive relief, in addition to all other legal and equitable remedies.

## EXCEPTIONAL CASE

91. Lemaire Illumination restates and re-alleges each of the allegations set forth herein and incorporates them herein.

92. This is an exceptional case warranting an award of attorney's fees to Lemaire Illumination under 35 U.S.C. § 285.

93. The Defendants have willfully and deliberately infringed, induced others to infringe, and/or contributed to the infringement of the Patents-in-suit with full knowledge and wanton disregard of Lemaire Illumination's rights thereunder, rendering this an "exceptional" case within the meaning of 35 U.S.C. § 285.

94.    Lemaire Illumination has incurred attorneys' fees, costs, and expenses in the prosecution of this action. Pursuant to 35 U.S.C. § 285, Lemaire Illumination is entitled to recover its reasonable and necessary fees and expenses.

## DEMAND FOR TRIAL BY JURY

95.    Lemaire Illumination, specifically requests a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

96.    WHEREFORE, Plaintiff Lemaire Illumination respectfully requests that judgment be entered in its favor and against Defendants and that the Court grant the following relief to Plaintiff:

A.  Judgment that Defendants have infringed the '661 Patent;

B.  Judgment that Defendants have infringed the '390 Patent;

C.  Judgment that Defendants have infringed the '266 Patent;

D.  That the Court award general and special damages to Lemaire Illumination for Defendants' infringing activities, which include but are not limited to Lemaire Illumination a reasonable royalty;

E.  Judgment that this case is exceptional;

F.  That this Court award Lemaire Illumination increased damages in an amount not less than three times the amount of damages found by the jury or assessed by this Court, for Defendants willful infringement pursuant to 35 U.S.C. § 285;

G.  That the Court enter a preliminary and thereafter a permanent injunction against Defendants, their officers, directors, agents, servants, employees, parent companies, affiliates,

subsidiaries, divisions, branches, attorneys, representatives, and all others acting in concert or privity with them, from direct infringement of the '661 Patent;

H. That the Court enter a preliminary and thereafter a permanent injunction against Defendants' active inducements of infringement and/or contributory infringements of the '661 Patent by others;

I. That the Court enter a preliminary and thereafter a permanent injunction against Defendants, their officers, directors, agents, servants, employees, parent companies, affiliates, subsidiaries, divisions, branches, attorneys, representatives, and all others acting in concert or privity with them, from direct infringement of the '390 Patent;

J. That the Court enter a preliminary and thereafter a permanent injunction against Defendants' active inducements of infringement and/or contributory infringements of the '390 Patent by others;

K. That the Court enter a preliminary and thereafter a permanent injunction against Defendants, their officers, directors, agents, servants, employees, parent companies, affiliates, subsidiaries, divisions, branches, attorneys, representatives, and all others acting in concert or privity with them, from direct infringement of the '266 Patent;

L. That the Court enter a preliminary and thereafter a permanent injunction against Defendants' active inducements of infringement and/or contributory infringements of the '266 Patent by others;

M. That this Court enter an order directing Defendants to deliver to Lemaire Illumination, and serve upon Lemaire Illumination's counsel, within thirty (30) days after entry of the order of injunction, a report setting forth the manner and form in which Defendants have complied with each injunction;

N.  That this Court award pre-judgment and post-judgment interest;

O.  That this Court award Lemaire Illumination's costs and attorney fees incurred in this action; and

P.  That this Court award such further and other relief and the Court may deem just and proper.

Date:   July 14, 2016                                Respectfully submitted,


                                                     */s/ Katarzyna Brozynski*
                                                     Katarzyna Brozynski
                                                     Texas State Bar No. 24036277
                                                     SHANNON, GRACEY, RATLIFF & MILLER LLP
                                                     420 Commerce Street, Suite 500
                                                     Fort Worth, Texas 76102
                                                     (817) 336-9333 Telephone
                                                     (817) 336-3735 Fax
                                                     Email: kbrozynski@shannongracey.com

                                                     Sorana G. Ban
                                                     Texas State Bar No. 24061520
                                                     Christian Ellis
                                                     Texas State Bar No. 24007154
                                                     M. Keith Ogle
                                                     Texas State Bar No. 24037207
                                                     SHANNON, GRACEY, RATLIFF & MILLER LLP
                                                     420 Commerce Street, Suite 500
                                                     Fort Worth, Texas 76102
                                                     (817) 336-9333 Telephone
                                                     (817) 336-3735 Fax
                                                     sban@shannongracey.com
                                                     cellis@shannongracey.com
                                                     kogle@shannongracey.com

                                                     NI, WANG AND MASSAND, PLLC
                                                     Neal G. Massand
                                                     Texas Bar No. 24039038
                                                     8140 Walnut Hill Lane, Suite 500
                                                     Dallas, TX, 75231
                                                     (972) 331-4600 Telephone
                                                     (972) 314-0900 Fax
                                                     nmassand@nilawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 14, 2016, the foregoing document was filed electronically in compliance with Local Rule CV-5(a), and thereby served on all counsel who are deemed to have consented to electronic service, per Local Rule CV-5(a)(3).

 */s/ Katarzyna Brozynski*
Katarzyna Brozynski